# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Brezzy Hurst,

                Plaintiff,        Case No. 1:15-cv-03560

v.                           Michael L. Brown
                                United States District Judge

Steven M. Youngelson, et al.,

                Defendants.

_____/

## ORDER

Plaintiff Brezzy Hurst sues Defendants WBY, Inc. ("WBY"), Surrey White, and Steven Youngelson, alleging Fair Labor Standards Act ("FLSA") violations.  In a previous order, the Court found Plaintiff an employee and Defendants employers under the FLSA.  (Dkt. 110.) Plaintiff then moved for summary judgment on whether Defendants violated the FLSA in good faith. (Dkt. 147.)  The Court grants Plaintiff's motion in part and denies Plaintiff's motion in part.

## I.    Background

Plaintiff is a former entertainer at Follies Strip Club ("Follies") in Atlanta, Georgia.  She sued WBY, Follies's corporate entity, along with

Follies's two owners, Steven Youngelson and Surrey White.  (Dkt. 29.)
She claimed Defendants misclassified her as an independent contractor,
and as a result, did not pay her the minimum wages or overtime pay the
FLSA requires.  (*Id.*)  Both Plaintiff and Defendants moved for summary
judgment.  (Dkts. 86; 87.)  The Court ruled for Plaintiff, finding (1) WBY
is an FLSA-covered enterprise; (2) Plaintiff is an employee entitled to the
FLSA's   protections;   (3) Defendants   White   and   Youngelson   are
"employers" along with WBY; (5) Defendants cannot offset any portion of
their minimum wage obligations; and (6) Defendants violated their FLSA
minimum wage obligations.  (Dkt. 110.)

Plaintiff here seeks summary judgment on four issues: whether
(1) Defendants can show they failed to pay minimum wages in good faith;
(2) Defendants' failure to pay minimum wage was willful; (3) Plaintiff can
recover $7.25 per hour for each hour worked at Follies; and (4) Plaintiff
can recover all "House fees," "DJ fees," and "House Mom fees" she paid at
Follies.  (Dkt. 147.)

## II.   Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that a court
"shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A moving party meets this burden merely by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The movant, however, need not negate the other party's claim. *Id.* at 323. In determining whether the moving party has met this burden, a court must view the evidence and all factual inferences in the

light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the movant has adequately supported its motion, the nonmoving party then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, there is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. The court, however, resolves all reasonable doubts in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Additionally, "[i]t is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

4

## III.   Discussion

### A.   Good Faith

There are two different standards in which an employer can avoid all or some liability for FLSA violations.  "The good-faith defense of section 259 is an objective test that bars actions for violations of the minimum wage or overtime compensation provisions of the FLSA if the employer pleads and proves that the act or omission complained of was (1) taken in good faith and was (2) in conformity with and (3) in reliance on a written administrative interpretation by a designated agency." *Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 926 (11th Cir. 1987).  And under 29 U.S.C. § 260, "if the employer shows to the satisfaction of the court that the act or omission giving rise to [the FLSA] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof."

To establish a good-faith defense under § 260, employers must show both objective and subjective good faith.  *See Davila v. Menendez*, 717 F.3d 1179, 1186 (11th Cir. 2013) ("If the employer fails to prove that he acted with both subjective and objective good faith, liquidated damages

are mandatory." (internal quotation marks and citations omitted)). Subjective good faith requires "an honest intention to ascertain what the Act requires and to act in accordance with it." *Id.* Objective good faith entails a duty to "investigate potential liability under FLSA." *Smith v. Wynfield Dev. Co.*, 451 F. Supp. 2d 1327, 1337 (N.D. Ga. 2006) ("Objective good faith means the employer had reasonable grounds for believing its conduct comported with the FLSA."); *see also Gardner v. Country Club, Inc.*, No. 4:13-CV-03399-BHH, 2015 WL 7783556, at *19 (D.S.C. Dec. 3, 2015) ("The owner and operator of a strip club would have to have his head buried in the sand not to know there have been considerable developments in the law regarding the status and compensation of exotic dancers under the FLSA.").

Defendants claim they did not pay Plaintiff the minimum wage as the result of a good-faith effort to comply with the FLSA. Defendants give several reasons in support of their good faith. First, Defendants point to Defendant Youngelson's reading of analogous caselaw. He claims he read cases examining whether adult dancers were employees. (Dkt. 147-1 at 4.) He also reviewed the FLSA's regulations and U.S. Department of Labor Wage & Hour Division's Administrator's

Interpretation Letter 2015-1 ("AL 2015-1") and U.S. DOL Field Assistance Bulletin No. 2018-4 ("FAB 2018-4"). (*Id.* at 3.) From this research, he concluded Follies's employment relationship with entertainers differed from the relationship of other clubs to adult dancers. (*Id.* at 4.)

Defendants also retained outside counsel to create independent contractor agreements. (*Id.* at 5.) Defendant Youngelson asked entertainers whether they would prefer to be employees, and these entertainers all told him they wanted to stay as independent contractors. (*Id.* at 5.) Defendants further argue that classifying adult entertainers as independent contractors remains industry standard despite many decisions where courts have found entertainers to be employees. (*Id.* at 6.)

Defendants cite the Georgia Department of Labor Wage & Hour Division determinations that prior entertainers that filed unemployment claims were independent contractors. (*Id.* at 7.) A Georgia Department of Labor Worker's Compensation Board auditor reviewing unemployment applications determined WBY properly classified entertainers as independent contractors. (*Id.* at 8.)

Plaintiff argues these actions do not show a good-faith effort to comply with the FLSA.  Plaintiff points out that Defendant Youngelson's conversations with entertainers over their desire to remain independent contractors and the administrative agency opinions Defendants relied on happened after Plaintiff stopped working at Follies.  Plaintiff also disputes that Defendant Youngelson read analogous case law.  Plaintiff cites Defendant Youngelson's testimony that seems to show a lack of familiarity with other strip club cases in the Northern District of Georgia. (Dkt. 139-1 at 289:9–291:4, 292:1–7, 292:22–25, 294:18–295:8.)  Plaintiff claims Defendant had no real understanding or desire to understand the FLSA's requirements.

Under 29 U.S.C. § 259(a), Defendants must show that they relied on "a written administrative interpretation by a designated agency." *Cole*, 824 F.2d at 926.  The administrative interpretations Defendants claim to have read, AL 2015-1 and FAB 2018-4, were both written after Plaintiff stopped working at Follies, meaning they came out after Follies had violated the FLSA.  Defendants thus cannot establish good faith under 29 U.S.C. § 259(a).  The Court grants Plaintiff summary judgment on the § 259(a) good-faith claim.

The Court, however, finds disputed material facts on whether Defendants showed good faith under § 260 in not paying Plaintiff the minimum wage. Some rules at Follies differed from the rules in other clubs in analogous cases. For instance, entertainers did not have set shifts and were not required to dance on stage. *Compare* (Dkt. 87-1 ¶¶ 42, 46), *with Clincy v. Galardi S. Enters., Inc.*, 808 F. Supp. 2d 1326, 1332–33 (N.D. Ga. 2011). These differences could mean Defendants took the other FLSA entertainer cases seriously — Follies may have tried to use these cases to create a permissible independent contractor relationship with its employees. As Defendants point out, adult entertainers are not per se employees. *See Tijerino v. Stetson Desert Project LLC*, No. 15-cv-2563, 2017 WL 9511247 (D. Az. June 21, 2017) (*rev'd on other grounds*).

Other evidence also potentially supports Defendants' good faith. The Georgia Department of Labor Wage & Hour Division found former entertainers that filed unemployment claims to be independent contractors. (Dkt. 147-1 at 8); s*ee Pena v. Handy Wash, Inc.*, 114 F. Supp. 3d 1239, 1247 (S.D. Fla. July 13, 2015) (admitting evidence showing prior IRS audits and unemployment claims that found the defendant not an

employer).  As did, according to Defendants, industry standards.  *See Stevenson*, 2015 WL 2353094 at *3 ("[A]n employer's reliance on industry practice is relevant to willfulness or good faith inquiry.").

The Court notes that Defendant Youngelson's claim to have read the other adult entertainment FLSA cases may be inconsistent with his testimony.  But "[t]his is the type of inconsistency that the [defendant] should test through cross-examination at trial and allow the jury to weigh in determining the credibility of each plaintiff's testimony in support of his or her claims." *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1317 (11th Cir. 2007).

The parties also dispute whether or how Defendants relied on outside counsel.  On the one hand, Defendants' outside counsel, Bennett Alsher, warned Defendant Youngelson that Follies "could not make incremental changes" to its business model if Defendants wanted to avoid liability under the FLSA.  (Dkt. 137 at 155:11–19.)  On the other hand, outside counsel purportedly told Defendant Youngelson that, if an entertainer sued Follies, the club had a "pretty good chance" of prevailing.  (Dkt. 139-2 at 73:17–74:10.)  Defendants' lawyer Cary Wiggins also testified that he had multiple conversations with Defendant

Youngelson about the analogous cases and the level of control Follies exercised over entertainers. (Dkt. 138 at 27:6–16.)

In sum, there is an objective question on whether WBY tried to comply with the FLSA when creating its employment relationship with the adult dancers. There is a subjective question on whether Defendants had an "honest intention" of working within the FLSA's requirements. The Court grants Plaintiff summary judgment on good faith under 29 U.S.C. § 259(a) and denies Plaintiff summary judgment on good faith under § 260.

## B.   Willfulness

The FLSA statute of limitations is three years for willful violations and two years for unwilful violations. 29 U.S.C. § 255(a). The standard for willfulness is higher than the good-faith standard. *See Dean v. 1715 Northside Drive, Inc.*, 224 F. Supp. 3d 1302, 1313–14 (N.D. Ga. 2016); *see also Alvarez*, 515 F.3d at 1163 (11th Cir. 2008) ("To establish that the violation of the [FLSA] was willful . . ., the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was."). The Court has found there is an issue of material fact

as to good faith under § 260.  The Court also finds a jury question on whether Defendants willfully did not pay Plaintiff the minimum wage.

### C.    Compensation for Unpaid Wages

Employers that fail to pay minimum wages are liable to "the employee or employees affected in the amount of their unpaid minimum wages . . . ."  29 U.S.C. § 216(b).  During Plaintiff's employment, the applicable federal minimum wage was $7.25 per hour.  The Court grants Plaintiff summary judgment, finding that at trial the factfinder will calculate Plaintiff's unpaid wages by multiplying the number of hours she worked by $7.25.

### D.    Kickbacks

Plaintiff paid fees to Follies called "House Fees" and tips to the DJ and the House Mom, an employee who collects entertainers' house fees, provides dancers with toiletries, and administers breathalyzer tests. Plaintiff claims these fees were illegal kickbacks and seeks compensation for them.

"[W]ages cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.'  The wage requirements of the Act will

not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee." 29 C.F.R. § 531.35.  The Eleventh Circuit has found this provision "prohibits any arrangement that 'tend[s] to shift part of the employer's business expense to the employees . . . to the extent that it reduce[s] an employee's wage below the statutory minimum.'" *Ramos-Barrientos v. Bland*, 661 F.3d 587, 594–95 (11th Cir. 2011) (internal quotation marks and citation omitted).

Other courts have found adult dancers can recover similar fees.  In *Reich v. Priba Corp.*, a case in which an adult dancer sued for minimum wages under the FLSA, the court found that "collecting a tip out fee similarly violates the FLSA because the deduction further reduces the entertainers' wages below the minimum wage." 890 F. Supp. 586, 595 (N.D. Tex. 1995).  Courts in the Northern District of Georgia have affirmed this finding.  *See Dean*, 224 F. Supp. 3d at 1326–27; *Henderson v. 1400 Northside Dr., Inc.*, No. 1:13-cv-3767, 2016 WL 3125012 (N.D. Ga. June 3, 2016).

Defendants argue they were collecting tips, not wages.  Defendants cite *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 582 N.13 (9th Cir. 2010),

13

and *Platek v. Duquesne Club*, 961 F. Supp. 835, 838 (W.D. Pa. 1995). Both cases found that 29 C.F.R. § 531.35 does not prohibit tip pooling with untipped workers where the employer has paid cash wages at least at the federal minimum wage. The difference between those cases and the case here is that the employer paid a wage in *Cumbie* and *Platek*. The employers paid no wages here, with the effect that Plaintiffs' wage went further below the minimum wage. *See Priba*, 890 F. Supp. at 595.

Defendants also argue DJ fees and House Mom fees should be treated differently from House Fees because those fees do not go directly to the club. The Court rejects this argument. Title 29, Section 531.35 of the Code of Federal Regulations "prohibits an arrangement that tends to shift part of the employer's business expense to the employees." *Ramos-Barrientos*, 661 F.3d at 594–95. A required tip to the DJ and the House Mom each time Plaintiff worked functioned as a subsidy to Follies — Defendants had to pay the DJ and House Mom less because they were being tipped by the entertainers. The Court grants Plaintiffs summary judgment.

## IV.   Conclusion

The Court **GRANTS in part** and **DENIES in part** Plaintiff Hurst's Motion for Summary Judgment (Dkt. 147).

The Court **ORDERS** the parties to file, no later than January 27, 2020, their consolidated pretrial order.  *See* LR 16.4(A), NDGa.  The Court may sanction the parties, including dismissing this action, if they fail to file their consolidated pretrial order.  The Court **DIRECTS** the Clerk to submit this matter after January 27, 2020, if the parties fail to file their consolidated pretrial order.

**SO ORDERED** this 26th day of December, 2019.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE